IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID LINDSAY, DONALD LINDSAY,      )
d/b/a LINDSAY FARMS, and            )
MATTHEW LINDSAY,                    )
                                    )
            Plaintiffs,             )
                                    )        1:16CV153
    v.                              )
                                    )
NICHINO AMERICA, INC., and          )
CROP PRODUCTION SERVICES, INC.,     )
                                    )
            Defendants.             )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before the court are Motions to Dismiss filed by Defendant Nichino America, Inc. ("Defendant Nichino") (Doc. 2), and Defendant Crop Production Services, Inc. ("Defendant CPS") (collectively "Defendants") (Doc. 19). Plaintiffs David Lindsay and Donald Lindsay, d/b/a Lindsay Farms, and Matthew Lindsay (collectively "Plaintiffs") have responded, (Docs. 12, 23), and Defendants have replied (Docs. 15, 25). These matters are now ripe for resolution and, for the reasons stated herein, Defendants' Motions to Dismiss will both be denied.

I.  **BACKGROUND**

Plaintiffs are residents of Hoke County, North Carolina, and are in the business of operating a joint farming venture. (Complaint ("Compl.") (Doc. 3) ¶¶ 1-3, 6.) Defendant CPS

conducts business in North Carolina and sells, among other things, herbicides manufactured by Defendant Nichino. (Id. ¶¶ 5, 7.) Plaintiffs have a history of doing business with Defendant CPS and, sometime prior to May 9, 2014, Plaintiffs met with a representative of Defendant CPS to discuss planting strategies for their upcoming cotton season. (Id. ¶¶ 8-9.) During those discussions, Defendant CPS's representative advised Plaintiffs that Defendant Nichino's "ET" herbicide could be used as a burn down agent to kill weeds prior to planting a cotton crop. (Id. ¶ 10.) Plaintiffs requested that Defendant CPS check with Defendant Nichino and confirm that ET could be used as a burn down agent for cotton, and Defendant Nichino confirmed to Defendant CPS the herbicide's suitability for Plaintiffs' intended use. (Id. ¶ 12.) Relying on this advice, Plaintiffs ordered various supplies from Defendant CPS, including the ET herbicide. (Id. ¶¶ 13-14.)

On or about May 9, 2014, Defendant CPS delivered Plaintiffs' order, and Plaintiff Donald Lindsay signed a delivery receipt for that order. (Id. ¶ 15.) The receipt that Plaintiff signed did not discuss warranties, either express or implied, or any limitations to possible damages from use of the product. (Id.; Compl., Ex. A, Delivery Receipt (Doc. 3-1).) However, the ET product itself came packaged with a thirty-two-page instruction booklet that contained several clauses that are

-2-

at issue here, including both language that Plaintiffs contend was an express warranty, as well as language that they allege "purported to limit" both implied warranties and the remedies available for a breach of warranty. (Compl. (Doc. 3) ¶¶ 17-19.)

As will be explained further in the analysis hereafter, there is an issue with respect to this court's consideration of the Instruction Booklet containing the disclaimers upon which Defendants rely. (See ET Instruction Booklet (Doc. 14).) Nevertheless, this court will describe what is contained in the Instruction Booklet, which Defendants allege requires dismissal of Count 2.

The paragraph in the Instruction Booklet that Plaintiffs allege is an "express warranty," (see Compl. (Doc. 3) ¶ 19), states that "[t]he following broadleaf weed species can be controlled or suppressed up to 4 inches in height or less, or rosettes of 3 inches in diameter or less[,]" and proceeds to list weeds that can be controlled by use of the ET product. (See ET Instruction Booklet (Doc. 14) at 9.)[1] As for disclaimers, the booklet notes the following, set off with an all capital, bolded header, in normal print:

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-3-

>The directions for use of this product are believed to be accurate and must be followed carefully. However, because of extreme weather and soil conditions, use methods and other factors [beyond] the control of Nichino America, Inc. (NAI), it is impossible for NAI to eliminate all risks associated with the use of this product. As a result, crop injury or ineffectiveness is always possible. To the extent consistent with applicable law, all such risks are [assumed] by the user or buyer.

(Id. at 39.)

Further, the booklet contains the following "Disclaimer of Warranties" in capital letters: "TO THE EXTENT CONSISTENT WITH APPLICABLE LAW, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE, WHICH EXTEND BEYOND THE STATEMENTS MADE ON THIS LABEL." (Id.)

Finally, the booklet contains a "Limitations of Liability" section, which reads as follows:

>TO THE EXTENT CONSISTENT WITH APPLICABLE LAW, THE EXCLUSIVE REMEDY OF THE USER OR BUYER FOR ANY AND ALL LOSSES, INJURIES OR [DAMAGES] RESULTING FROM THE USE OR [HANDLING] OF THIS PRODUCT, WHETHER IN CONTRACT, WARRANTY, TORT, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE, SHALL NOT EXCEED THE PURCHASE PRICE PAID, OR AT THE ELECTION OF NICHINO AMERICA, THE [REPLACEMENT] OF PRODUCT.

(Id. at 40.)

Plaintiffs allege that they applied the ET product in accordance with the instructions but it failed to effectively prevent weeds from growing in their cotton fields. (Compl. (Doc. 3) ¶¶ 21-22.) As a result, Plaintiffs allege that they had

to resort to other means of controlling the weeds, including other herbicides and manual pulling, and that the presence of the weeds reduced their crop yield. (Id. ¶¶ 23-24.) Plaintiffs then initiated this action, alleging causes of action for products liability, breach of warranty, and negligence, and claiming damages for the cost of the ET product, the purchase of replacement herbicides, manual labor costs, and lost crop yields. (Id. at 3-5.) Defendants have now moved to dismiss Plaintiffs' second cause of action as well as any claims for damages that exceed the purchase price of the ET product on the basis of the disclaimers contained in the Instruction Booklet. (See, e.g., Mot. to Dismiss Pls.' Complaint (Doc. 2).)

**II. LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible provided the plaintiff provides enough factual content to enable the court to reasonably infer "that the defendant is liable for the misconduct alleged." Id. (citation omitted). The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411,

421-22 (1969) (citations omitted). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 500 U.S. 544, 555, 570 (2007); see Iqbal, 556 U.S. at 680. Under Iqbal, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). Iqbal, 556 U.S. at 680-81 (citation omitted). Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." Id. at 686. "At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor." Estate of Williams-Moore, 335 F. Supp. 2d at 646 (citation omitted).

## III. ANALYSIS

Defendant Nichino's motion rests upon the theory that Plaintiffs have no right of action for breach of warranty and cannot claim any damages that exceed the purchase price of the ET herbicide product because they effectively disclaimed any implied warranties and limited damages under the North Carolina Uniform Commercial Code ("UCC"). (Mem. of Law in Supp. of Mot. to Dismiss by Defendant, Nichino America, Inc. ("Def. Nichino's Br.") (Doc. 2-1) at 1-2.) Defendant CPS contends that, as a seller in the chain of supply, they are entitled to rely upon Defendant Nichino's disclaimers and limitations. (See Def. Crop Production Services, Inc.'s Joinder in Defendant Nichino America, Inc.'s Mot. to Dismiss ("Def. CPS's Br.") (Doc. 19) at 4.)[2] Because Defendant CPS's motion rises and falls entirely with Defendant Nichino's motion, this court will address them together.

### A. Consideration of the Information Booklet

Defendants, in moving to dismiss, rely heavily upon Defendant Nichino's liability disclaimers contained in the

---

[2] This court notes that Defendant CPS takes issue with the Complaint's allegations that Plaintiffs did not sign any documents that contained disclaimers specifically written by and covering Defendant CPS, although, as they admit, that is a factual issue that must be taken in Plaintiffs' favor at this stage and bears no weight in this opinion. (Def. CPS's Br. (Doc. 19) at 4 n.2.)

-7-

Information Booklet that was in the ET herbicide packaging. Defendants allege that those "disclaimers fall squarely within the standards required by the North Carolina UCC and adopted by North Carolina courts." (Def. Nichino's Br. (Doc. 2-1) at 6.) However, it appears through some administrative oversight that Defendant Nichino failed to file the booklet containing the warranty disclaimers as an attachment to the affidavit of Frank Winslow, (see Declaration of Frank Winslow ("Winslow Decl.") Ex. 2 (Doc. 2-2)), as Winslow references the booklet in his affidavit. (Id. ¶ 3.) Plaintiffs, in responding to the motions to dismiss, argue that the Instruction Booklet was not filed, (Mem. of Law in Opp'n to Def. Nichino America, Inc.'s Mot. to Dismiss ("Pls.' Nichino Br.") (Doc. 13) at 8), and therefore is not evidence in the case. After Plaintiffs made this allegation, Defendant Nichino recognized its oversight and filed the Instruction Booklet independently, (see ET Instruction Booklet (Doc. 14)), and, five days later, filed its reply brief. (Reply Mem. of Law in Supp. of Mot. to Dismiss of Defendant, Nichino America, Inc. ("Def. Nichino's Reply") (Doc. 15).) In its reply brief, Defendant Nichino contends that the court still should consider the Instruction Booklet and the related disclaimers. (Id. at 3-7.) Defendant CPS contends the same in its briefing. (See generally Def. CPS's Br. (Doc. 19); Doc. 25.) Plaintiffs have not objected to this court's consideration of the

-8-

Instruction Booklet, even though it was filed after Plaintiffs responded to Nichino's motion to dismiss.

When a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the "documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Documents other than the pleadings are properly considered if they are either attached to the complaint, see Fed. R. Civ. P. 10(c), or attached to the motion to dismiss, so long as they are integral to the complaint and authentic. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). For example, the Fourth Circuit has held that a newspaper article could properly be considered on a Rule 12(b)(6) motion without conversion to summary judgment, even though it was not attached to the complaint, "because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity." Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999) (citations omitted).

In this case, notably, Plaintiffs allege in the Complaint that "[t]he ET product in question came with a 32-page instruction booklet published by Defendant Nichino America." (Compl. (Doc. 3) ¶ 17.) It therefore appears undisputed that the Instruction Booklet was attached to the ET product, that the

-9-

booklet was explicitly relied upon in the Complaint, and that Plaintiffs do not challenge its authenticity.

The more difficult question is whether the Instruction Booklet is "integral to . . . the complaint[.]" Phillips, 190 F.3d at 618. Defendants focus their arguments in support of dismissal on the limitations and exclusions of warranties under North Carolina law, (see, e.g., Def. Nichino's Br. (Doc. 2-1) at 6-8), and whether those were valid. However, Defendants do not address the question of what terms, conditions, or documents constitute the actual contract at issue in this case. It appears to this court that the Complaint, while acknowledging the Instruction Booklet, (Compl. (Doc. 3) ¶¶ 17-20), also alleges that the disclaimers contained in the Instruction Booklet are not part of the contract to the extent that they are inconsistent with the terms and conditions of the sales agreement. (See Compl. (Doc. 3) ¶¶ 15-17; Pls.' Nichino Br. (Doc. 13) at 8-10.)

Specifically as to what may be part of the relevant contract and resulting warranties, Plaintiffs allege:

> The instruction booklet was attached to the individual bottles of ET, which in turn were enclosed within closed boxes at the time the product was delivered. The booklet was not available to Plaintiffs to inspect before they accepted delivery of the product. The purported limitation of remedy in the instruction booklet was ineffective to limit the remedies available to the Plaintiffs in this case.

-10-

(Compl. (Doc. 3) ¶ 18.) In response to Defendants' motions to dismiss, Plaintiffs rely upon and quote Pennington Grain & Seed, Inc. v. Tuten, 422 So. 2d 948 (Fla. Dist. Ct. App. 1982), for the following proposition:

> We agree in principle with the Kansas Supreme Court which, upon examining that state's statute similar to Florida's Section 672.316, stated:
>
>> The very purpose of the statutory requirement is that any limitation be brought to the attention of the buyer at the time the contract is made. An attempted limitation at the time of delivery long after a contract of purchase is signed does not accomplish this purpose, being a unilateral attempt of a party to limit its obligations.

(Pls.' Nichino Br. (Doc. 13) at 9 (quoting Pennington Grain, 422 So. 2d at 951).)

Plaintiffs' warranty claims, and the related ineffectiveness of any limitations by Defendants, rely in part upon Plaintiffs' allegation that the contract between the parties was complete upon delivery and acceptance. As a result, any limitation of warranties contained in the booklet are ineffective because they were not communicated to Plaintiffs until after delivery and acceptance by Plaintiffs of the ET

-11-

herbicide product.[3] Neither Defendant has persuasively explained whether or not the principle recognized in Pennington Grain and relied upon by Plaintiffs applies to North Carolina law as well. Defendants also fail to persuasively address whether the limitations in the booklet are part of any sales contract accepted by Plaintiffs.

Nevertheless, at this stage of the proceedings, this court is not able to say what warranties and related limitations may be part of any agreement between the parties, even assuming the Instruction Booklet was attached to the ET herbicide and assuming any limitations on warranties were conspicuous and permitted[4] as a matter of law. Plaintiffs have plausibly alleged that any limitations on express or implied warranties were not effective as they were not part of a sales contract. The terms and conditions of any contract and the effect of limitations, if any, of Defendant CPS's sales documents or other communications,

---

[3] Defendant CPS appears to recognize Plaintiffs' argument as to this factual issue of the terms and conditions of the contract as "CPS notes that its own sales documents . . . contain CPS' standard terms and conditions, which include reasonable disclaimers and limitations similar to those on the Product label." (Def. CPS's Br. (Doc. 19) at 4 n.2.)

[4] As will be further explained infra, this court finds that issues of fact preclude granting Defendants' motions to dismiss as to these issues as well.

are factual issues that will have to be resolved following discovery.

    **B.    <u>The Disclaimer of Warranty Clause</u>**

Even assuming that the Instruction Booklet constituted a binding part of the contract, there are still factual issues preventing dismissal of Claim 2.

North Carolina has adopted the Uniform Commercial Code ("UCC"), and as this action concerns a sale of goods, the UCC will govern. See N.C. Gen. Stat. § 25-2-102. In North Carolina, express warranties are governed by N.C. Gen. Stat. § 25-2-313, while implied warranties are governed by N.C. Gen. Stat. §§ 25-2-314 and 25-2-315. Disclaimers are governed by N.C. Gen. Stat. § 25-2-316, while limitations or modifications of damages arising under warranties are governed by N.C. Gen. Stat. § 25-2-719.[5] Under the UCC, to the extent reasonable, words or conduct that create an express warranty and "words or conduct tending to negate or limit warranty" should be construed as consistent with each other, but, to the extent such construction is unreasonable, words of limitation are inoperative. N.C. Gen.

---

[5] "A disclaimer of [warranty] liability serves to limit liability by reducing [the] instances where a seller may be in breach, while a limitation or modification [of warranty liability] is a restriction on available remedies" in the event a breach actually occurs. See Billings v. Joseph Harris Co., 27 N.C. App. 689, 693, 220 S.E.2d 361, 366 (1975).

Stat. § 25-2-316(1). In order to limit warranties, the UCC provides that:

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

§ 25-2-316(2).

The Disclaimer of Warranty expressly mentions merchantability, is in writing, and states that no warranties extend "beyond the statements made on this label." (See ET Instruction Booklet (Doc. 14) at 39.)

The question that remains is only whether the disclaimers in the Instruction Booklet were conspicuous for purposes of the UCC. N.C. Gen. Stat. § 25-1-201 defines "conspicuous[ness]" as that which is "so written . . . that a reasonable person against [whom] it is to operate ought to have noticed it." § 25-1-201(b)(10). Whether or not a term is "conspicuous" is a decision for the court. See Billings v. Joseph Harris Co., 27 N.C. App. 689, 694, 220 S.E.2d 361, 365 (1975). In Billings, for example, the court found on summary judgment that a disclaimer was conspicuous when it was set off from other provisions, in bold, capital letters, on a one page form signed by Plaintiff. Id. at 693, 220 S.E.2d at 365. Other North Carolina courts have found a

-14-

warranty on a product's label that was in darker, larger typeface to be conspicuous. See, e.g., Tyson v. Ciba-Geigy Corp., 82 N.C. App. 626, 631, 347 S.E.2d 473, 477 (1986).

Here, the Instruction Booklet containing the warranty and disclaimers at issue has been entered into the record.[6] The express warranty appears on page nine of the booklet.[7] (See ET Instruction Booklet (Doc. 14) at 9.) The disclaimers appear at the end of the forty-page document, after the instructions for the products use. (See id. at 39-40.) The "Disclaimer of Warranties" and the "Limitation on of Liabilities" clauses

---

[6] This court finds that it can consider the Instruction Booklet without converting these motions to ones for summary judgment. On a Rule 12(b)(6) motion, the court may rely on exhibits attached to the complaint, see Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 176 (4th Cir. 2009), as well as pertinent documents that the plaintiffs have failed to attach to a complaint if the defendants have attached them to a motion to dismiss, especially if they are referred to in the complaint. See Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006).

[7] To the extent that Defendants appear to contest whether this was an express warranty, those contentions are unavailing. An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" N.C. Gen. Stat. § 25-2-313(1)(a). The warranty here states that certain weed species can be suppressed using the ET product, an assertion that Plaintiffs allege was the entire reason they purchased it, and one that was also alleged to have been confirmed orally by both Defendants. (See Compl. (Doc. 3) ¶¶ 10, 12-13.) The court finds the paragraph on page nine of the Instruction Booklet and the oral representations made by Defendants constitute express warranties for purposes of the UCC.

-15-

contained in that booklet are partly in capital letters, and the headings are bold, as contemplated by N.C. Gen. Stat. § 25-1-201(b)(10). While that is some evidence of conspicuousness, the instant case is distinguishable from the cases cited by Defendants finding disclaimers to be conspicuous. For example, the disclaimers are not located on a short sales contract that Plaintiffs signed, as in Billings v. Joseph Harris, Co., 27 N.C. App. 689, 220 S.E.2d 361 (1975), nor was the disclaimer on the product's label, as in Tyson v. Ciba-Geigy Corp., 82 N.C. App. 626, 347 S.E.2d 473 (1986).

Here, rather, there is an express warranty that affirms that a given list of "broadleaf weed species can be controlled or suppressed up to 4 inches in height or less or rosettes of 3 inches in diameter or less." (ET Instruction Booklet (Doc. 14) at 9.) The instructions for use of ET, specifically the instructions for its use as a burn down agent for cotton, appear on page twenty. (Id. at 20.) The disclaimers, by contrast, are located at the very end, on pages thirty-nine and forty, and are not mentioned in any form until that point. (Id. at 39-40.) This court finds that the location of the disclaimers, notably their separation from both the express warranty and the instructions relevant to Plaintiffs' use of the product, the length of the Instruction Booklet, and the lack of anything in the Complaint showing that Plaintiffs read or were even aware of the

-16-

disclaimers, or have a history of dealing with Defendant Nichino such that they should have been aware of the disclaimers, prevents this court from finding, at the motion to dismiss stage, that the disclaimer was so conspicuous that a reasonable person ought to have had notice of it.[8] Defendants' motions to dismiss the breach of warranty claim will be denied.

### C.  **The Limitation of Liability Clause**

Defendants also contend that the amount in controversy should be capped at the purchase price for the product because Defendant Nichino validly limited liability under the UCC. Under N.C. Gen. Stat. § 25-2-719, parties "may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article[.]" § 25-2-719(1)(a). Limitations of consequential damages must be conscionable. § 25-2-719(3). "Unconscionability relates to contract terms that are oppressive. It is applicable to one-sided provisions, denying the contracting party any opportunity for meaningful choice." See Billings, 27 N.C. App. at 695, 220 S.E.2d at 366 (citations omitted).

---

[8] This court intends this holding to imply only that it cannot make a finding as to conspicuousness on the current limited record. See Young v. Am. Cyanamid Co., 786 F. Supp. 781, 784 (E.D. Ark. 1991) (finding that whether disclaimers were conspicuous was not a matter that could be resolved "in isolation through the submission of labels and pamphlets").

Here, this court finds that the issue of whether the limitation of damages clause was conscionable also requires more factual development before this court can make a proper finding.

N.C. Gen. Stat. § 25-2-302 discusses the effect of unconscionability in a contract or clause and notes that "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." § 25-2-302(2). The commentary to that section explains that hearing evidence is proper on the issue of unconscionability, and that "[t]he principle is one of the prevention of oppression and unfair surprise[.]" See id. at cmt. 1. "[U]nconscionability is 'ultimately a determination to be made in light of a variety of factors not unifiable into a formula.'" Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 103, 655 S.E.2d 362, 370 (2008) (citation omitted).

Here, there are factual issues as to whether Plaintiffs actually saw or read the limitation on liability clause, were warned that there were any limitations before purchase, were on equal commercial footing with Defendants, or had any sort of chance to bargain regarding the limitation clause at all. These issues render this court unable to find that such a clause is or is not unconscionable. As such, the issue requires further fact

-18-

finding. Defendants' motions to dismiss as to the amount of damages sought will be denied.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (Docs. 2, 19) are **DENIED.**

This the 16th day of August, 2016.

                                          /s/ William L. Osteen, Jr.
                                United States District Judge